UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NADIA RODRIGUEZ,

    Plaintiff,

v.                                      CASE NO. 8:15-cv-1621-T-23AAS

MIAMI DADE COUNTY,

    Defendant.
_____/

**ORDER**

Miami Dade County employed Nadia Rodriguez, who is Cuban-American and Hispanic, as a probationary employee in the Public Housing and Community Development Department from June 4, 2012, until her termination on January 9, 2013. An "Assistant Site Manager," Rodriguez worked in a warehouse office with four employees: an administrative secretary, an accountant, a semi-skilled laborer, and Rodriguez's immediate supervisor, Leshia Elie. About a dozen technicians worked elsewhere in the warehouse. Rodriguez alleges that most of her co-workers, including Elie, are African-American and that no co-worker is Cuban-American.

Rodriguez's duties included processing, printing, and distributing work orders to the technicians and providing Elie with regular reports. In addition, Rodriguez occasionally received used appliances, including air conditioners, for disposal. When Rodriguez reported to Elie that "good appliances were being thrown away," Elie

responded, "Hispanic people are looking where they're not supposed to be looking." (Doc. 63-1 at 56–57)

After that exchange, Elie purportedly began harassing Rodriguez. Elie stated that Rodriguez possessed a "language barrier" and told Rodriguez, "you can't work here if you have a language barrier." (Doc. 63-1 at 56–57, 60, 144) Rodriguez alleges that Elie failed to deliver promised job training, failed to provide office supplies and an adequate desk, and failed to grant Rodriguez's vacation requests. Also, Elie assigned other employees' work to Rodriguez, blamed Rodriguez for other employees' poor performance, and successfully encouraged other employees to criticize and sabotage Rodriguez's work.

On July 24, 2012, Elie issued a memorandum to Rodriguez identifying problems with Rodriguez's performance and stating that a failure to improve "[w]ill result in additional corrective actions, up to dismissal." (Doc. 78-1 at 12) Rodriguez refused to sign the memorandum.

Elie continued to inform Rodriguez that her work fell below standard. On December 17, 2012, Elie requested permission from a senior manager to terminate Rodriguez's employment because "Rodriguez failed to demonstrate her ability to work as an Assistant Site Manager." (Doc. 63-3 at ¶ 14, Doc. 63-4 at 5–8)

On January 9, 2013, Elie terminated Rodriguez's probationary employment due to Rodriguez's "performance problems." (Doc. 63-4 at 9) After orally informing Rodriguez, Elie "ripped" a computer mouse out of Rodriguez's hand, pushed

Rodriguez, and threatened to call the police. (Doc. 63-1 at 123–126) When Rodriguez testified by telephone at an unemployment compensation hearing, Elie called Rodriguez's telephone seventeen times.

In her Second Amended Complaint (Doc. 42), Rodriguez alleges claims for (1) disparate treatment in violation of Title VII of the Civil Rights Act of 1964 (Count I), (2) retaliation in violation of Title VII (Count II), (3) retaliation in violation of the False Claims Act, 31 U.S.C. § 3730(h) (Count III), and (4) and hostile work environment in violation of Title VII (Count IV). The defendant moves (Doc. 64) for summary judgment.

## DISCUSSION

**1. Title VII claims**

Arguing that Rodriguez's Title VII claims are time-barred, the defendant repeats the argument asserted in the defendant's September 29, 2016 motion to dismiss. (Doc. 43) But a January 30, 2017 order (Doc. 48) denies the defendant's motion (Doc. 43) and holds (1) that Rodriguez "filed (Doc. 1) timely a lawsuit alleging a violation of Title VII of the Civil Rights Act" and (2) that the second amended complaint sufficiently states claims under Title VII for disparate treatment, for retaliation, and for hostile work environment.[1]

---

[1] In addition, the defendant now argues that Rodriguez's first complaint (Doc. 1) fails to "constitute a complaint under the Federal Rules of Civil Procedure" because the first complaint is "completely devoid of factual allegations" (Doc. 64 at 8); thus, according to the defendant, (1) "Rodriguez's second amended complaint does not relate back to her initial complaint because [the first complaint] did not contain any factual allegations and did not constitute a complaint under the [FRCP]" and (2) the Title VII claims set forth in the second amended complaint are time-barred
(continued...)

### a. Disparate treatment

Under 42 U.S.C. § 2000e-2(a)(1), an employer is prohibited from "discriminat[ing] against any [person] with respect to his compensation, terms, conditions, or privileges of employment" because of that person's race or national origin. A plaintiff can establish a violation of Title VII by direct evidence of discrimination or by circumstantial evidence that permits an inference of discrimination. *Hinson v. Clinch Cnty. Bd. of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000).

Taking the available inferences in Rodriguez's favor, Count I survives summary judgment. Even assuming that no direct evidence of discrimination exists, the record creates a triable issue concerning the defendant's discriminatory intent.

### b. Retaliation

Title VII prohibits an employer from "discriminat[ing] against any of [its] employees . . . because he has opposed any practice made an unlawful employment practice by" Title VII. 42 U.S.C. § 2000e-3(a). To establish a *prima facie* case of retaliation, Rodriguez must show (1) that she engaged in statutorily

---

[1](...continued)
by the requirement to sue no later than ninety days after the EEOC issues a right-to-sue letter. (Doc. 64 at 8)

But Rodriguez's first complaint, which alleges that the defendant violated "Title VII of the Civil Rights Act," (Doc. 1) notified the defendant of Rodriguez's Title VII claims. As explained in the January 30, 2017 order, Rodriguez's Title VII claims in the second amended complaint "relate back" to the first complaint. (Doc. 48) A district court must remain "extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII] . . . 'the scope of an EEOC complaint should not be strictly interpreted.'" *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004).

activity, (2) that she suffered a materially adverse employment action, and (3) that a causal link exists between the statutorily protected activity and the materially adverse employment action. *Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1212 (11th Cir. 2008).

Rodriguez admittedly engaged in no statutorily protected activity before her termination. (Doc. 63-1 at 161) Rodriguez concedes that Jeannie Mendoza, a department director, is the only person to whom Rodriguez complained during her employment. (Doc. 63-1 at 146, 161, 167). Rodriguez never informed Mendoza about discrimination based on national origin or race. (Doc. 63-1 at 164) Instead, Rodriguez complained to Mendoza about "irregularities" with appliances and about Elie's repeated criticism of her work. (Doc. 63-1 at 146, 161, 164, 167; Doc. 78 at 7; Doc. 78-1 at 14–15, 17; Doc. 78-2 at 3–5, 9)

In contrast, the defendant offers no meaningful argument with respect to Rodriguez's claim for post-employment retaliation. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997) (holding that Title VII's anti-retaliation provision includes former employees). The defendant does not dispute that Rodriguez engaged in statutorily protected activity when, on March 10, 2013, she filed a complaint with the defendant's Office of Fair Employment alleging race and national origin discrimination. (Doc. 63-1 at 161; Doc. 63-2 at 6–9). And Rodriguez alleges that Elie retaliated just one month later, on April 10, 2013, by calling Rodriguez's

telephone seventeen times in an effort to disrupt her unemployment compensation hearing.² (Doc. 42 at ¶ 34, Doc. 63-1 at 133–135, Doc. 78 at 8–9, Doc. 79 at ¶ 16).

The defendant suggests in a footnote that Rodriguez possesses no admissible evidence that Elie placed the calls. (Doc. 64 at 7 n.1) But Rodriguez testified that an internet search within days of the calls revealed that the number belonged to Elie. (Doc 63-1 at 133–134) The defendant fails to explain why this evidence cannot be presented in admissible form at trial. *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.") For example, Rodriguez might examine Elie at trial about the calls. Absent a more focused challenge, the post-employment retaliation claim survives summary judgment.

### c.    **Hostile work environment**

To prevail on a hostile work environment claim, Rodriguez must show (1) that she belongs to a protected group, (2) that she was subject to unwelcome harassment, (3) that the harassment was based on a protected characteristic, (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment, and (5) that a basis exists to hold the employer liable for the harassment. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1304–1305 (11th Cir. 2016). An employee must "subjectively perceive" the harassment as severe or

---

² The hearing notice sent to the defendant included Rodriguez's telephone number and prominently warned that "failure to keep a telephone line open may result in an unfavorable decision." (Doc. 78-2 at 14)

pervasive and the employee's subjective perception "must be objectively reasonable." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999). The objective character and effect of harassment varies with (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is "physically threatening" or "humiliating" or a "mere offensive utterance"; and (4) whether the conduct unreasonably interferes with the employee's job performance, considered "in context and cumulatively." *Mendoza*, 195 F.3d at 1242, 1246.

When Rodriguez complained about the disposal of repairable appliances, Elie responded, "Hispanic people are looking where they're not supposed to be looking." (Doc. 63-1 at 56–57) Also, Elie stated, "you can't work here if you have a language barrier" and commented at other times about Rodriguez's language barrier. (Doc. 63-1 at 56–57, 60, 144) Rodriguez cannot recall the frequency of the comments. (Doc. 63-1 at 60) Rodriguez never expressed her annoyance to Elie. (Doc. 63-1 at 60)

Rodriguez recalls no other comment based on a Title VII protected characteristic. (Doc. 63-1 at 164) For instance, Rodriguez cannot remember the last time Elie commented about Hispanics and fails to remember whether Elie commented about Hispanics in June 2012, July 2012, August 2012, November 2012, December 2012, or January 2013. (Doc. 63-1 at 164–166) Rodriguez reports that other employees commented about Hispanics but could not recall any specific comments. (Doc. 63-1 at 162–164)

The defendant persuasively argues that Rodriguez fails to establish severe or pervasive harassment based on national origin or race.[3] Although Rodriguez maintains that Elie's comments were "really annoying" (Doc. 63-1 at 60), she cites no evidence showing that she perceived the alleged harassment as severe or pervasive. In addition, Rodriguez fails to demonstrate that an objectively reasonable person would perceive the alleged harassment as severe or pervasive. Elie's conduct is infrequent and neither physically threatening nor humiliating. The record does not suggest that Elie's comments unreasonably interfered with Rodriguez's job performance. Considered in context and cumulatively, isolated or sporadic comments fail to demonstrate that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1248 (11th Cir. 2014) (internal quotation marks omitted).

**2. False Claims Act**

The False Claims Act creates a claim for an employee who "is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h). To establish a

---

[3] In response, Rodriguez attributes the hostile work environment to protected activity under the False Claims Act rather than to a Title VII protected characteristic. (Doc. 78 at 9)

- 8 -

retaliation claim under the False Claims Act, Rodriguez must show that she engaged in protected conduct and that the defendant altered the terms and conditions of her employment "because of" the protected conduct. *U.S. ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1304 (11th Cir. 2010); *Reynolds v. Winn-Dixie Raleigh Inc.*, 620 Fed. App'x 785, 791 (11th Cir. 2015).

The defendant successfully argues that Rodriguez demonstrates no protected conduct. *See Arthurs v. Glob. TPA LLC,* 208 F. Supp. 3d 1260, 1264–1266 (M.D. Fla. 2015) (Byron, J.) (explaining that the 2009 amendments to § 3730(h) expanded the scope of protected conduct). Rodriguez alleges only that she mentioned "irregularities with appliances" to Mendoza and that the defendant disposed of repairable appliances. (*E.g.*, Doc. 78-1 at 14, Doc. 79 at ¶¶ 8–10) Rodriguez concedes that she "[doesn't] know what happened" after the appliances returned to the warehouse. (Doc. 63-1 at 170) In her response (Doc. 78), Rodriguez identifies no evidence suggesting that the defendant defrauded the United States government.

## CONCLUSION

The defendant's motion (Doc. 64) for summary judgment is **DENIED** as to Count I and as to the post-employment Title VII retaliation claim in Count II. The motion is otherwise **GRANTED** as to Count II and as to Counts III and IV.

This action is referred to mediation with Mark A. Hanley, of Bradley Arant Boult Cummings LLP, 100 North Tampa Street, Suite 220, Tampa, Florida 33602, (813) 229-3333. The parties must mediate no later than **May 18, 2018**, and the

parties must comply with Paragraphs (b), (d), (e), and (f) of the June 3, 2016 mediation order (Doc. 36).

The clerk must include this action on the **July 2018** trial calendar, and the parties must comply with the relevant provisions of the Case Management and Scheduling Order (Doc. 32).

ORDERED in Tampa, Florida, on April 18, 2018.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE